**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Sergio B.F., | Case No. 26-cv-2992 (NEB/DJF) |
| Petitioner, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *Acting Director, Immigration and Customs Enforcement*; David Easterwood, *Acting Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement*; Todd Blanche, *Acting U.S. Attorney General; Department of Justice*; Erik Klang, *Crow Wing County Sheriff, Warden Crow Wing County Detention Facility, Brainerd, Minnesota,* | |
| Respondents. | |

This matter is before the Court on Petitioner Sergio B.F.'s[1] *Verified Petition for Writ of Habeas Corpus* (ECF No. 2) ("Petition"). Sergio seeks an order for his immediate release from immigration detention. For the reasons stated below, the Court recommends the Petition be granted.

**BACKGROUND**

I.     **Entry and Notice to Appear**

Sergio is a citizen of Mexico who entered the United States in 2003 without inspection. (ECF No. 2 at 1, 7.) Sergio has remained in the U.S. since September 2003. (*Id.* at 1.) On or around January 20, 2014, immigration officials with the Department of Homeland Security ("DHS") apprehended and detained Sergio and issued him a Notice to Appear ("NTA"), and he was released

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in immigration matters.

on bond. (*Id*. at 2.)  In February of 2014, Sergio applied for Cancellation of Removal, which remains pending. (*See* ECF No. 2 at 2; ECF No. 2-7.)  Sergio also has a pending I-589 Application for Asylum, Withholding and CAT ("Asylum Application"). (*See* ECF No. 2 at 2.)  On March 7, 2019, DHS officials again detained Sergio and issued him another NTA. (*Id*., ECF Nos. 2-3, 2-4, 2-5.)  An immigration judge ("IJ") with the Executive Office of Immigration Review ("EOIR") released him on bond a few weeks later, on March 25, 2019. (ECF No. 8-2.)  Sergio had a hearing on his Cancellation of Removal and Asylum Application scheduled for June 9, 2026, but the immigration court cancelled that hearing on June 1, 2026. (ECF No. 2-8.)

Sergio's criminal history includes several misdemeanors and petty misdemeanors: a petty misdemeanor ticket for allowing an unlicensed driver in 2021; a 4th Degree DWI conviction on December 2, 2022 in Wadena County Minnesota, *see* Minn. Stat. § 169A.27; a misdemeanor Endanger Welfare of a Child on February 4, 2023 in Missouri; and a petty misdemeanor seatbelt violation ticket in 2023. (ECF No. 2 at 2-3; ECF No. 8-5; ECF No. 8-6.)  Sergio has paid all fines and met all sentencing requirements associated with those tickets and convictions. (*See* ECF No. 2 at 3; ECF No. 2-8.)

## II.     Sergio's Arrest and Detention

On June 15, 2026, Immigration and Customers Enforcement ("ICE") Enforcement and Removal Operations ("ERO") officers (under DHS) conducted an immigration enforcement operation at Vallarta's Mexican Grill in Park Rapids, Minnesota. (ECF No. 8-4 at 2.)  During the operation, the ICE officers observed Sergio departing the restaurant and followed his vehicle to an Anytime Fitness center. (ECF No. 8-4 at 2-3.)  The ICE officers approached Sergio outside the gym and placed him under arrest without incident. (ECF No. 8-4 at 2-3; ECF No. 2 at 3.)  Sergio alleges the ICE surveillance and his arrest were based entirely upon his appearance. (ECF No. 2 at 3.)

Sergio also alleges the arresting officers did not serve him with a warrant at the time of his arrest. (ECF No. 2 at 3; ECF No. 9 at 2.)  Respondents maintain that the ICE officers served Sergio with an I-200 Warrant of Arrest at the time of his arrest, and they have produced a copy of the warrant they allegedly served.  (ECF No. 7 at 2; ECF No. 8-3.)  Following his arrest, ICE transferred Sergio to the Crow Wing County Jail in Brainerd, Minnesota, where he remains in custody.  (ECF No. 2 at 3; ECF No. 7 at 2.)

## III.    Relief Requested

The Petition asks the Court to order Respondents to release Sergio immediately.  (ECF No. 2 at 15.)  The Petition further requests an order enjoining Respondents from re-detaining Sergio without a hearing and awarding him attorney's fees and costs under the Equal Access to Justice Act ("EAJA").  (*Id.*)  The Petition asserts claims based on alleged violations of: (1.) Fifth Amendment procedural due process; (2.) Fourth Amendment warrantless and unreasonable search and seizure; (3.) the Immigration and Nationality Act ("INA"); and (4.) the Administrative Procedures Act ("APA").  (*Id*. at 9-14.)

## DISCUSSION

## I.    Legal Standards

The federal habeas statute empowers federal courts to release civilly-detained individuals such as Sergio when that detention violates the Constitution or federal law.  28 U.S.C. § 2241; *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025).  It is well-established that federal regulations are federal law.  *See Resolution Trust Corp. v. Home Sav. of America*, 946 F.2d 93, 96 (8th Cir. 1991); *Velocity Express Corp. v. Bayview Capital Partners, LP*, No. 02-cv-521 (RHK/AJB), 2002 WL 980502, at *2 n.3 (D. Minn. May 9, 2002).  It therefore follows that a habeas petitioner may be released when his civil detention arises from a violation of federal regulations.  *See In re United*

*States*, 197 F.3d 310, 315 (8th Cir. 1999) (citing *United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954)); *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) ("[T]he *Accardi* doctrine bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights[.]") (quotation omitted).

## II.     Detention and Bond Revocation

Petitioner argues his detention is subject to the 8 U.S.C. § 1226 statutory scheme.  (ECF No. 2 at 5.)  He contends his detention is unlawful pursuant to that scheme and he is entitled to release because: (1.) Respondents did not serve him with a warrant prior to his detention; (2.) they did not validly revoke his 2019 bond; and (3.) requesting a bond hearing with an immigration judge would be futile, because immigration judges are restricted from releasing detainees on bond pursuant to memoranda from the Department of Homeland Security ("DHS") and recent appellate court rulings, including *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  (ECF No. 9 at 2-3.)

Respondents concede that Sergio is subject to 8 U.S.C. § 1226(a) pursuant to the 2019 NTA upon which his bond was initially granted, but they argue his detention is authorized under that statute.  (ECF No. 7 at 3.)  Respondents contend that they validly revoked Sergio's 2019 bond prior to his detention on June 15, 2026, and arrested him, as is required by 8 U.S.C. § 1226(a), pursuant to a warrant.  (*Id.* at 2.)  Respondents further argue Sergios' Petition should be denied for failure to exhaust administrative remedies.  Respondents do not dispute that detainees subject to 8 U.S.C. § 1226(a) are entitled to a bond hearing, but they contend Sergio has not exhausted his administrative remedies because he did not request such a hearing in front of an immigration judge.

As explained more fully below, the Court recommends the Petition be granted because the record establishes that DHS officials arrested and detained Sergio based on his identity and the

4

pendency of his ongoing removal proceedings (*see* ECF 8-3).  But those facts were already known when the IJ released Sergio on bond in 2019.  Thus, Sergio has already exercised his right to a bond hearing and been released by an immigration judge.  DHS officials cannot simply override an immigration judge's decision to release a detainee on bond by revoking that bond without identifying a material change in circumstances, and they did not do so in this case.  The revocation of Sergio's bond was therefore invalid and he should be released.

Under 8 U.S.C. § 1226(a), a non-citizen may be arrested and detained only "[o]n a warrant issued by the Attorney General … pending a decision on whether the alien is to be removed from the United States."  Pending such a decision, the Attorney General:

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole;

8 USC § 1226(a).

Individuals who are detained under 8 USC § 1226(a) are entitled to a bond hearing.  *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))).  "Depriving [Petitioner] of his right to a bond hearing—a protection to which federal regulations plainly entitle him—strikes at the heart of his due process right to be free of arbitrary detention."  *Souleimane C. v. Blanche*, No. 26-cv-2215 (LMP/JFD), 2026 WL 1180075, at *4 (D. Minn. Apr. 30, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.")).

Should the Attorney General release an individual under 8 USC § 1226(a), he may, at any

time, "revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 USC § 1226(b). 8 C.F.R. § 236.1(c)(9) provides further guidance on release revocation under 8 USC § 1226(b):

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. § 236.1(c)(9) (emphasis added).

However, if DHS officials do not initially release a detainee pursuant to the Attorney General's discretion under 8 USC § 1226(a), the detainee may appeal that decision to an immigration judge by seeking a bond redetermination hearing:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released.

8 C.F.R. § 236.1(d)(1). The Attorney General or the noncitizen may thereafter appeal an immigration judge's bond determination to the Board of Immigration Appeals:

> ***Appeal to the Board of Immigration Appeals.*** An appeal relating to bond and custody determinations may be filed to the Board of Immigration Appeals in the following circumstances:
> (i) In accordance with § 1003.38 of this chapter, the alien or the Service may appeal the decision of an immigration judge pursuant to paragraph (d)(1) of this section.

8 C.F.R. § 236.1(d)(3). There is no suggestion in the record that DHS appealed the IJ's order releasing Sergio on bond in 2019.

DHS officials commonly cite to 8 C.F.R. § 236.1(c)(9) for their authority to revoke a noncitizen's release. DHS has "immense discretion" to revoke a release from DHS custody under 8

6

C.F.R. § 236.1(c)(9) (*see Ferrufino Guerrero v. Mullin*, No. 4:26-cv-3146, 2026 WL 1679263, at *5 (D. Neb. June 10, 2026)).  However, the authority of DHS officials to revoke bond when it is issued pursuant to an immigration judge's order is more limited.  The Board of Immigration Appeals has held that, "where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (enjoining ICE from re-detaining petitioner and revoking his bond without a pre-deprivation hearing with an immigration judge).  This makes sense.  To hold otherwise would nullify the role of immigration judges as officials representing an entirely separate branch of the Department of Justice, the EOIR.  If DHS officials could subvert immigration judges' decisions without reason, then immigration judges would be entirely without purpose.

In summary, to lawfully re-detain Sergio under 8 USC § 1226(a), Respondents would have had to provide him with a series of procedural protections: (1.) an immigration officer first would have had to have found a "change in circumstance" that justified the revocation of Sergio's release on bond, 8 C.F.R. § 236.1(c)(9), *Matter of Sugay*, 17 I. & N. Dec. at 640; (2.) Respondents would have needed to present Sergio with a warrant stating a valid reason for his arrest, 8 USC § 1226(a); (3.) Respondents then would have had to provide Sergio an opportunity to apply to an immigration judge for a bond redetermination hearing, 8 C.F.R. § 236.1(d)(1); and (4.) if the immigration judge denied his request, Sergio would have had to be given an opportunity to appeal that decision to the BIA, 8 C.F.R. § 236.1(d)(3)(I).  Based on the record before the Court, Sergio has received none of these protections.

Respondents have not provided convincing evidence that an immigration officer found a material "change in circumstance" sufficient to justify the revocation of Sergio's release on bond as

required under 8 C.F.R. § 236.1(c)(9) and *Matter of Sugay*, 17 I. & N. Dec. at 640. Respondents argue in their briefing that Sergio violated his bond based on his 2022 misdemeanor DWI conviction. (ECF No. 7 at 2.) However, the immigration officials who arrested and detained Sergio made no reference to this alleged justification, and the contemporaneous documents they issued at that time belie Respondents' assertion.

Respondents produced a copy of the disputed arrest warrant that they state Sergio received at the time of his arrest. (ECF No. 8-3, June 15, 2026 Form I-200 Warrant of Arrest ("Warrant").) But that document provides no indication officials arrested Sergio because he violated his bond. Indeed, the Warrant fails to indicate that Respondents were even aware Sergio had previously been released on bond pursuant to an immigration judge's order. Instead, the Warrant conditioned Sergio's arrest on "the pendency of ongoing removal proceedings against" Sergio and "biometric confirmation of [Sergio's] identity and a records check … indicat[ing] … that [he] either lacks immigration status or notwithstanding such status is removable under U.S. law". (*Id.*) In other words, the Warrant states, as grounds for Sergio's arrest, that he lacks immigration status and had removal proceedings pending. These facts plainly were known to the IJ in 2019 when the IJ issued the order releasing Sergio on bond; they do not show a change in circumstances.

Respondents also produced a Form I-213 Record of Deportable/Inadmissible Alien dated June 15, 2026, which also gives no indication that ICE/ERO officers made the decision to arrest Sergio and revoke his bond because he violated a bond condition:

> On June 15, 2026, ERO St. Paul Officers conducted a targeted enforcement operation at Vallarta's Mexican Grill, located at 100 Second St. W, Park Rapids, Minnesota. During this operation, officers identified and initiated surveillance on [Sergio] as he departed the restaurant in a blue Honda Civic.
>
> Officers followed the vehicle to an Anytime Fitness at 200 Gilbert Ave. S, Park Rapids, MN. After [Sergio] parked, officers pulled alongside his vehicle and ordered him to exit; he complied with their commands.

> [Sergio] was subsequently placed under arrest without incident and served with a Form I-200 Warrant for Arrest.  Deportation Officer Hermosilla then transported him to the Crow Wing County Jail for direct booking and processing.

(ECF No. 8-4 at 2-3.)

The only reference in the record to Sergio violating his bond conditions appears in a declaration dated June 26, 2026, which Deportation Officer Geneva Sabin prepared in response to Sergio's Petition.  (ECF No. 8.)  The declaration states in part that during the enforcement operation on June 15:

> [a]n ICE/ERO Supervisory Detention and Deportation Officer issued a Warrant for Arrest of Alien, Form I-200, determining [Sergio] violated a condition of his bond and that he was removable from the United States.

(ECF No. 8 at 1.)  Given the absence of any earlier reference to a bond violation, this statement appears to be a post-hoc justification for Sergio's arrest.  Such justifications are not cognizable.  *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (explaining that "a foundational principle of administrative law" is that "judicial review of agency action is limited to the grounds that the agency invoked when it took the action" (cleaned up)); *Bryan A.Q.C. v. Lyons*, No. 26-cv-3165 (JRT/EMB), 2026 WL 1998719, at *3 (D. Minn. July 10, 2026) (granting immigration habeas petition when Respondents had not provided lawful reason to revoke petitioner's 8 USC § 1226(a) conditional parole at the time of his detention, holding that justifications for parole revocations provided in Respondents' briefing could not correct the error).

Moreover, entirely missing from Officer Sabin's declaration is any explanation of exactly *what* bond condition Sergio is alleged to have violated.  This omission does not appear to be accidental.  The IJ's March 15, 2019 Order granting bond attached only one condition: payment of the $10,000 bond amount.  (ECF No. 8-2.)  Respondents do not dispute that Sergio met this condition (ECF No. 8 at 2), and they have produced no evidence of any other condition of his

release.  Respondents argue Sergio's DWI conviction is sufficient justification for bond revocation but proffer no supporting citations for this proposition.[2]  The evidence before the Court is that Sergio satisfied all bond conditions imposed by the IJ in 2019 and continued to satisfy those conditions until Respondents arrested and detained him in 2026.

Respondents have therefore failed to identify a change in circumstances to justify revocation of Sergio's bond, and the arrest Warrant fails to establish a valid reason for his arrest.  Because Sergio's bond has not been lawfully revoked, the proper remedy is release.  *See Singh v. Hale*, No. 2:26-cv-53, 2026 WL 765623, at \*4 (D. Vt. Mar. 18, 2026) (ordering petitioner's immediate release following DHS's unilateral revocation of his bond, noting that his removability was known at the time of his initial bond release, and the later warrant allegedly revoking that bond was predicated only on his removability); *see also Chourio Herrera v. Bondi*, No. 26-cv-1895 (JMG), 2026 WL 827571, at \*2 (D. Minn. Mar. 25, 2026) ("Because the Court finds that the petitioner's grant of humanitarian parole was still valid when he was detained in December 2025, the Court finds his detention is unlawful."); *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (stating that release is the "typical remedy" for "unlawful executive detention"); *Bryan A.Q.C.,* 2026 WL at \*3 (D. Minn. July 10, 2026) ("at this juncture, 'a bond hearing cannot cure the fact that [the petitioner] is presently detained while the order releasing him on his own recognizance remains operative.'") (quoting *Roberto B.Q. v. Lyons*, No. 26-cv-2656 (PJS/SGE), ECF No. 8 at 5 (D. Minn. June 10, 2026)); *Sandhu v. Mullin*, No. 7:26-cv-5009, 2026 WL 1146643, at \*5 (D. Neb. Apr. 28, 2026) ("A lesser measure, like ordering a bond hearing, 'cannot cure the fact that [the petitioner] is detained while his conditional parole is still ongoing because it has not been properly terminated.'" (quoting *Singh,*

---

[2] The commission of certain criminal offenses is grounds for mandatory detention without a bond hearing, *see* 8 U.S.C. § 1226(c), but the misdemeanor DWI conviction on which Respondents base their argument is not such an offense.

2026 WL 766228, at *10)); *but see Ferrufino Guerrero*, 2026 WL at *6 (granting bond hearing rather than immediate release in similar circumstances). The Court therefore recommends Petitioner be immediately released subject to his 2019 bond.[3]

## III.   Exhaustion

Because the Court concludes that Sergio's arrest and detention were unlawful such that he should be released, it need not dwell significantly on Respondent's argument that Sergio is responsible for his predicament because he failed to exhaust his administrative remedies by seeking another bond hearing with an immigration judge. However, the Court pauses to observe there is no evidence in the record that Respondents ever provided Sergio an opportunity to appear before an immigration judge to contest his detention. When immigration officials detained Sergio in 2014, they provided him a Form I-286 Notice of Custody Determination that advised him, "You may request a review of this determination by an immigration judge." (ECF No. 2-2.) He made such a request (*see id.*) and was released (*see* ECF No. 2 at 2). In contrast, Respondents have failed to come forward with any evidence to suggest officials advised him of his right to a bond hearing when they arrested him on June 15, 2026, or otherwise provided him with any opportunity to request one. Moreover, in the absence of changed circumstances, the notion that exhaustion principles required Sergio to seek a bond redetermination hearing from an immigration judge, when an immigration judge *already* considered the same circumstances and released him, is meritless. The Court rejects Respondents' exhaustion argument on these grounds.

## IV.   Objections

Given the expedited nature of these proceedings, the Court is altering the standard timelines

---

[3] Because Sergio's bond was not properly revoked before he was detained, and the Court concludes Respondents' failure to follow their own procedures warrants release as the *Accardi* doctrine requires, 347 U.S. at 266-68, the Court does not reach the merits of his remaining claims.

11

for Respondents to file objections to this Report and Recommendation.  *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added).  Respondents must file any objection to this Report and Recommendation on or before **July 29, 2026**.  Petitioner may file a response to any objections on or before **July 31, 2026**.

## RECOMMENDATION[4]

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.   Petitioner Sergio B.F.'s *Verified Petition for Writ of Habeas Corpus* (ECF No. 2) be **GRANTED**.

2.   Respondents be ordered to release Petitioner Sergio B.F. from custody:

  A.   As soon as practicable;

  B.   Inside the State of Minnesota;

  C.   At a safe time and place communicated in advance to counsel; and

  D.   With **_all_** of Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys.

---

[4] The Court recommends denying Sergio's request for a prospective injunction permanently restraining Respondents from detaining him again in the future without a pre-deprivation hearing, because the legality of any such detention would turn on the circumstances and rationale for his detention at that time.  Sergio also requests attorney's fees under the Equal Access to Justice Act ("EAJA"), 29 U.S.C. § 2412(d)(1)(A).  The Court recommends that this issue be raised and considered in a separate motion for EAJA fees after the Petition is fully resolved.

Dated: July 24, 2026                          s/ Dulce J. Foster
                                              _____
                                              Dulce J. Foster
                                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before **July 29, 2026**.  Petitioner may file a response to any objections on or before **July 31, 2026**.